1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  CHRISTOPHER MICHAEL COLVIN,

9               Plaintiff,

10       v.

11  COMMISSIONER OF SOCIAL SECURITY,

12               Defendant.

Case No. C24-1504-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

13

14      Plaintiff seeks review of the partial denial of his applications for Supplemental Security

15  Income (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision,

16  the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the

17  Commissioner's final decision and **DISMISSES** the case with prejudice.

18                                **BACKGROUND**

19      Plaintiff was born in 1974, has a GED, and has worked as a demonstrator, retail store

20  manager, and management trainee.  *See* AR 55, 829.  Plaintiff was last gainfully employed in

21  2019.  *See* AR 274, 805.

22       In January 2020, Plaintiff applied for benefits, alleging disability as of December 31,

23  2016.  AR 249-57.  His applications were denied initially and on reconsideration, AR 83, 94,

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 1

1    105-06, and Plaintiff requested a hearing.  The ALJ conducted a hearing on June 7, 2022, AR 46-

2    82, and Plaintiff thereafter amended his alleged onset date to June 1, 2020, *see* AR 15.  On July

3    8, 2022, the ALJ issued a decision finding Plaintiff disabled with consideration of his

4    alcoholism, but that his substance use was a contributing factor material to the determination of

5    disability because he would not be disabled if he stopped the substance use.  AR 15-40.

6         The Appeals Council denied review of the ALJ's decision, AR 1-5, and Plaintiff appealed

7    to this Court.  The Court, by Order dated May 21, 2023, and pursuant to the stipulation of the

8    parties, remanded the matter for further administrative proceedings.  AR 874-75.

9         On April 23, 2024, Plaintiff appeared for a hearing with an ALJ.  AR 841-70.  On May

10   22, 2024, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of April 18,

11   2024, the date his age category changed, but not disabled prior to that date.  AR 801-32.  For the

12   period prior to April 18, 2024, the ALJ found Plaintiff disabled with consideration of his

13   substance use, but that the substance use was a contributing factor material to the determination

14   of disability because he would not have been disabled if he stopped the substance use.  *Id*.

15                    **THE ALJ'S DECISION**

16        Utilizing the five-step disability evaluation process,[1] the ALJ found in relevant part:

17   **Step one**:  Plaintiff engaged in substantial gainful activity (SGA) in 2019, but there was a
     continuous twelve-month period during which he did not engage in SGA.

18

19   **Step two**:  Plaintiff has the following severe impairments:  post-traumatic stress disorder
     (PTSD), generalized anxiety disorder, social anxiety disorder, agoraphobia with panic
     disorder, major depressive disorder, depression/unipolar depression, persistent depressive

20   disorder, mild neurocognitive disorder, lumbar and cervical spine impairments, bilateral
     hip osteoarthritis, hypertension/hypertensive urgency, and alcoholism/alcohol use

21   disorder.

22

23

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

**Step three**:  With respect to the period prior to April 18, 2024, if Plaintiff stopped the substance use, his impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  With respect to the period prior to April 18, 2024, if Plaintiff stopped the substance use, Plaintiff can perform light work, except that he can lift/carry ten pounds occasionally and frequently, stand/walk for up to twenty minutes at a time for a total of one hour and sit for up to thirty minutes total for a total of seven hours in an eight hour day; can understand, remember, and carry out simple instructions and tasks, and use judgment to make simple work-related decisions; cannot perform work requiring a specific production rate (such as assembly line work) or work that requires an hourly quota; rare changes in a work setting; no contact with the public, can work in proximity to but not in coordination with coworkers, and occasional contact with supervisors; occasional stooping; no crouching, crawling, kneeling, or climbing ramps, stairs, ropes, ladders, or scaffolds; and no work at heights or in proximity to hazardous conditions.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  With respect to the period prior to April 18, 2024, if Plaintiff stopped the substance use, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and Plaintiff is therefore not disabled.

AR 801-32.

Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 3

1   1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

2   determine whether the error alters the outcome of the case."  *Id*.

3         Substantial evidence is "more than a mere scintilla.  It means - and means only - such

4   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

5   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

6   747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

7   conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

8   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

9   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

10  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

11  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

12  must be upheld.  *Id.*

13                      **DISCUSSION**

14        Plaintiff argues the ALJ erred in considering four medical opinions.  The Commissioner

15  argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and

16  should be affirmed.

17        **A.**      **Standard for Assessing Medical Opinions**

18        Under regulations applicable to this case, the ALJ is required to articulate the

19  persuasiveness of each medical opinion, specifically with respect to whether the opinions are

20  supported and consistent with the record.  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  The

21  "supportability" factor addresses the relevance of the objective evidence presented in support of

22  an opinion, as well as the "supporting explanations" provided by the medical source.  20 C.F.R.

23  §§ 404.1520c(c)(1), 416.920c(c)(1).  The "consistency" factor examines the consistency of the

1  opinion with evidence from other medical and nonmedical sources.  20 C.F.R. §§

2  404.1520c(c)(2), 416.920c(c)(2).  The more consistent an opinion is with that other evidence, the

3  more persuasive it will be.  *Id.*  An ALJ's consistency and supportability findings must be

4  supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

5       **B.       The ALJ Did Not Err in Assessing Medical Opinions**

6            1.  *Martin Cahn, M.D.*

7            Martin Cahn, M.D., conducted a physical functional assessment of Plaintiff in May 2021.

8  AR 578-82.  Dr. Cahn identified non-exertional limitations as including the inability to work at

9  heights due to vertigo, decreased range of motion, pain in hips, back, knees, "even when

10  stationary," sitting, and social anxiety.  AR 579.  He opined Plaintiff could perform sedentary

11  work, defined as the ability to lift ten pounds maximum, frequently lift/carry lightweight articles,

12  and able to walk or stand only for brief periods.  AR 580.  He assessed very significant

13  interference with the ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and

14  crouch due to lower back pain, and with communicating due to memory problems and PTSD,

15  and significant interference with the same physical abilities (except sitting) due to vertigo.  AR

16  579.  He opined that the assessed effects on basic work activities were not primarily the result of

17  a substance use disorder.  AR 580.

18            The ALJ found Dr. Cahn's opinion partially persuasive.  AR 827.  To the extent

19  consistent with the RFC, the ALJ found the assessed physical limitations generally supported by

20  the medical evidence of record, "which at times shows decreased range of motion of the back,

21  neck, and extremities, decreased sensation, and ongoing pain complaints to treating medical

22  providers[.]"  *Id.* (citing AR 391, 570, 581-82, 619, 963-64).  To the extent Dr. Cahn suggested

23  more restricted abilities, the ALJ found the opinion not consistent with other consistent findings

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

1   of normal strength, motor function, and gait, *id*. (citing AR 389-95, 500, 539, 599, 969, 1017,

2   1099), and conservative treatment recommendations from a pain clinic, *id*. (citing AR 1023); *see*

3   *also* AR 823 (describing recommendations of "conservative treatment with walking

4   recommendations, acupuncture referral, pain psychology evaluation, anti-inflammatory

5   supplements and diet advice") (citing AR 1023-24).  The ALJ found Dr. Cahn's opinion on

6   Plaintiff's mental abilities not supported as it was outside Dr. Cahn's expertise and not consistent

7   with the record, which showed generally normal mental status findings during the period of

8   reduced alcohol use.  AR 827 (citing AR 635, 647-48, 660-61, 677-78, 693, 719, 1083, 1149,

9   1230-31, 1237-47).

10      As related to physical impairments, Plaintiff asserts the ALJ improperly substituted his

11  unqualified judgment for that of treating medical professionals in finding inconsistency with

12  conservative treatment recommendations, that the explanation for finding aspects of the opinion

13  persuasive and other aspects not persuasive is so vague and confusing as to lack legitimacy, and

14  that substantial evidence is consistent with and supports the opinion and shows the ALJ cherry-

15  picked the evidence.  As related to mental impairments, Plaintiff asserts that an opinion is not

16  properly rejected because it is not within the specialty of a provider, that Dr. Cahn's opinion is

17  consistent with other medical opinions of record, and that substantial evidence does not support

18  the ALJ's characterization of the record as reflecting generally normal mental status findings.

19      Contrary to Plaintiff's contention, the ALJ's explanation of his finding was not vague or

20  confusing.  The ALJ found Plaintiff limited to, *inter alia*, a maximum lifting/carrying capacity of

21  ten pounds, standing one hour total, walking one hour total, sitting seven hours total, no exposure

22  to heights, no crouching, crawling, or climbing, simple instructions and work-related decisions,

23  no production rates or hourly quotas, rare changes in work setting, no contact with the public,

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 6

working only in proximity but not in coordination with coworkers, and only occasional contact with supervisors. AR 815. The ALJ therefore adopted an RFC in many respects consistent with the opinion of Dr. Cahn and rejected the opinion only to the extent it suggested more restricted abilities. *See* AR 579-80, 815, 827.

Nor does Plaintiff show that the ALJ improperly substituted his judgment for that of medical professionals or cherry-picked the evidence in reaching his conclusion. As recognized by the Ninth Circuit, ALJs are equipped to independently review and draw conclusions from medical evidence in order to fulfill their statutory duty of determining whether a claimant is disabled. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). The ALJ here identified support for his decision to not wholly adopt Dr. Cahn's opinion by pointing to findings on examination and evidence of conservative treatment recommendations. Plaintiff offers a different interpretation of the evidence, but does not undermine the substantial evidence support for the ALJ's at least equally rational interpretation. Plaintiff also fails to acknowledge that, while finding Dr. Cahn's opinion partially persuasive, the ALJ in large part rejected the opinions of consultative examiner Dan Phan, M.D., and two State agency medical consultants that Plaintiff retained the capacity to perform at least medium exertional work. *See* AR 827 (finding opinions of State agency medical consultants not persuasive because, while consistent with earlier records, subsequent medical evidence showed more severe musculoskeletal and hypertension issues warranting greater physical restrictions); AR 828 (finding Dr. Phan's opinion only somewhat persuasive because, while it was supported by the examination, "subsequent medical records suggest far greater functional limitations, including later x-rays showing lumbar spine abnormalities and somewhat greater hip abnormalities.").

1         Finally, even if the ALJ improperly found a portion of Dr. Cahn's opinion unsupported in

2    falling outside of this physician's area of expertise, *see, e.g.*, *Sprague v. Bowen*, 812 F.2d 1226,

3    1232 (9th Cir. 1987) (physicians are, as a general matter, qualified to offer opinions relating to

4    mental impairments), he nonetheless assessed limitations accounting for some degree of

5    impairment as opined by Dr. Cahn, and offered a separate and sufficient reason for not fully

6    adopting the opinion based on its inconsistency with the evidence, *see, e.g., Woods*, 32 F.4th at

7    793 n.4 (finding that even if an opinion is supported, an ALJ may properly find it unpersuasive

8    because it is inconsistent with the record).  For this reason and for the reasons stated above, the

9    ALJ did not harmfully err in finding Dr. Cahn's opinion only partially persuasive.

10               2.  *Noah Dassel, ARNP*

11         Plaintiff's primary care provider, Noah Dassel, ARNP, completed an assessment of

12    Plaintiff's ability to perform work-related activities in June 2022.  AR 790-94.  Dassel assessed

13    Plaintiff as able to perform sedentary work, including the ability to lift up to ten pounds and

14    occasionally lift and carry light items, to stand and walk from two-to-four hours in an eight hour

15    day, sit about four-to-six hours in an eight hour day, limited in pushing and pulling with upper

16    extremities, limited to occasional reaching and handling, limited to never climbing, frequently

17    balancing, and occasionally stooping, crouching, kneeling, and crawling, restricted from working

18    at heights or around moving machinery, and expected to miss more than two days of work a

19    month, requiring additional breaks beyond customary breaks, and requiring accommodation such

20    as flexible scheduling to sustain employment.  AR 790-93.

21         The ALJ found Dassel's opinion partially persuasive.  AR 828.  He found the opinion of

22    sedentary-to-light exertional abilities with postural limits supported by the medical evidence of

23    record, as discussed in relation to Dr. Cahn's opinion.  *Id*.  He found assessed limitations more

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 8

1   restrictive than those included in the RFC, such as more sedentary limits, manipulative

2   restrictions, and additional absences, not supported by the record, which documented frequent

3   findings of normal gait and normal motor function on examination even by Dassel. *Id*. (citing

4   AR 500, 539, 570, 599, 964, 1017, 1099). The ALJ further found such limitations inconsistent

5   with findings of normal range of motion, motor strength, and gait at the consultative examination

6   with Dr. Phan not quite a year earlier, and inconsistent with the conservative treatment for

7   musculoskeletal pain, as discussed earlier in the decision. *Id*.

8         In assigning error, Plaintiff again argues the ALJ improperly "played doctor," cherry-

9   picked evidence, and offered a vague and insufficient rationale. He specifically argues, for

10   example, that the ALJ failed to sufficiently explain why the evidence of normal gait and motor

11   function results were more significant than other notable observations in the record. *See, e.g.*,

12   AR 619 (June 2021 examination finding, *inter alia*, lumbar range of motion limited with back

13   pain in flexion and extension, limited internal rotation of right hip, mildly antalgic gait on right,

14   and right knee pain) and AR 1017 (noting, in addition to normal gait, limited cervical rotation

15   and pain in lumbar range of motion). He also objects to the ALJ's decision to rely on the

16   findings of one-time consultative examiner Dr. Phan over the observations and consistent

17   conclusions of Dassel, Dr. Cahn, and the rest of Plaintiff's treatment team, the latter of whom

18   had access to more and more recent of Plaintiff's records and who were better versed as to the

19   treatment warranted for his conditions.

20         The Court finds no error. As with Dr. Cahn, the ALJ reasonably found many of the

21   limitations Dassel assessed supported by and consistent with the record, and sufficiently

22   explained and properly identified support for his conclusion to not adopt limitations more

23   restrictive than those included in the RFC. Again, Plaintiff offers a different interpretation of the

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

1    evidence, but does not undermine the substantial evidence support for the ALJ's at least equally

2    rational interpretation.  The ALJ also properly considered the objective findings on examination

3    by Dr. Phan, while reasonably declining to rely on the opinions of Dr. Phan and the State agency

4    medical consultants and instead adopting an RFC in many respects consistent with Dassel's

5    opinion.  In addition, while the ALJ may consider factors such as the length and purpose of a

6    treatment relationship and the frequency of examination, he is not required to make specific

7    findings regarding such relationship factors.  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. §

8    404.1520c(b)(2)).

9         Plaintiff, finally, does not demonstrate error in the ALJ's conclusion that Dassel's

10    opinion as to any greater limitations in functioning was inconsistent with the evidence of

11    conservative treatment.  Instead, the ALJ's interpretation of the evidence associated with

12    Plaintiff's treatment is both rational and supported by substantial evidence.  *See* AR 820

13    (contrasting testimony of pain and fatigue keeping Plaintiff in bed most of the day with treatment

14    consisting mainly of nonsteroidal anti-inflammatories and a singular injection for the right hip)

15    (citing AR 571, 617); AR 823 (noting no significant orthopedic treatment, specialist referral,

16    injections, surgery, or pain management, pain consult but only conservative treatment with

17    walking recommendations, acupuncture referral, pain psychology evaluations, anti-inflammatory

18    supplements, and diet advice, that Plaintiff had otherwise only been treated by his primary care

19    provider, that, even then, there had been very little treatment for neck and back pain issues, and

20    that physical exams had been grossly normal) (citing AR 1023-24; AR 396-573; AR 391, 483,

21    500, 570, 608, 964, 1017, 1048).

22

23

1          3.   *Carolyn Brenner, M.D.*

2          Plaintiff's psychiatrist, Carolyn Brenner, M.D., completed a mental impairment

3    questionnaire in May 2022.  AR 795-97.  Dr. Brenner identified various signs and symptoms and

4    stated Plaintiff's functioning was significantly impaired by high anxiety, depressed mood, panic

5    attacks, low energy, hyper startle and hyper vigilance response, and impaired concentration and

6    memory.  AR 795.  She assessed marked restriction of activities of living, moderate difficulties

7    in maintaining social relationships, and marked difficulties maintaining concentration,

8    persistence, or pace.  AR 796.  She indicated that even a minimal increase in mental demands or

9    change in environment would be predicted to cause Plaintiff to decompensate, and a current

10   history of one or more years' inability to function outside a highly supportive living arrangement

11   with indication of continued need for such arrangement.  AR 796-97.

12          The ALJ found Dr. Brenner's opinion not persuasive if Plaintiff stopped the substance

13   use.  AR 825-26.  The ALJ noted that Dr. Brenner did not assess specific functional limitations

14   for basic mental work activities, but opined broadly that Plaintiff experienced impaired

15   concentration and memory and had the above-described restrictions and difficulties.  AR 825.

16   The ALJ also noted that Dr. Brenner indicated she did not consider substance use in arriving at

17   her opinion.  AR 825; *see also* AR 796 ("Note: Please do not consider substance abuse in

18   arriving at the degree of limitation.").  The ALJ found that, even assuming an assessment without

19   consideration of alcohol use, there was no evidence in the record indicating how Dr. Brenner was

20   aware of how Plaintiff functions with and without alcohol use.  AR 825.  Without that

21   information documented in the treatment notes, the ALJ found no assurance Dr. Brenner's

22   opinion as to Plaintiff's functional capacity was assessed when using or not using alcohol.  *Id.*

23   The ALJ, in contrast and after reviewing all of the evidence, was able and did make a

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11

1    supportable assessment of how Plaintiff functions under and not under the influence of alcohol.

2    AR 825-26.  Further, when considering the medical evidence if alcohol use stopped, the record

3    as the ALJ discussed in relation to the opinion of Rahul Khurana, M.D., indicated Plaintiff would

4    have greater functional abilities than Dr. Brenner opined.  AR 826.  That is, since significantly

5    reducing his alcohol intake, Plaintiff's treatment remained conservative and other than at times

6    varied mood and affect, observations on mental status examination (MSE) had been generally

7    normal.  *Id*. (citing AR 635, 647-48, 670-71, 677-78, 693, 718, 1083, 1149, 1230-31, 1236-47).

8    The ALJ, finally, found Dr. Brenner's opinion somewhat inconsistent with evidence Plaintiff

9    was taking care of his girlfriend's home and school-age children, and his ill parents.  *Id*. (citing,

10   *inter alia*, AR 609, 847-49, 1237).

11          Plaintiff first disputes the ALJ's assertion that Dr. Brenner "opined broadly[.]"  AR 825.

12   He points, for example, to the definitions of "marked" and "[d]ifficulties maintaining

13   concentration, persistence or pace" on the form completed.  AR 796.  However, the ALJ

14   accurately observed that, rather than identifying specific functional limitations for basic mental

15   work activities, *see, e.g.*, AR 586-87 (opinion of Jenna Yun, Ph.D., assessing, *inter alia*, mild or

16   no limitation in relation to short and simple instructions, moderate limitation in learning new

17   tasks, and marked limitation in communicating and performing effectively in a work setting), Dr.

18   Brenner opined as to impairment in Plaintiff's concentration and memory, and as to limitations

19   in the above-described functional categories, *see* AR 796.

20          Plaintiff next notes that there is no requirement for a medical provider to have observed a

21   claimant's functioning while not under the influence of alcohol or for a period of abstinence to

22   allow such observation.  He contends that the ALJ's statements reveal fundamental error in the

23   application of the law pertaining to the materiality of drug addiction and alcoholism (DAA).  *See*

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 12

1   Social Security Ruling (SSR) 13-2p.  He further asserts that the alleged superiority of the ALJ's

2   interpretation of the evidence is undermined by the contradiction between the statement that the

3   ALJ was able to make a supportable assessment of Plaintiff's functioning when "under and not

4   under the influence of alcohol," AR 25-26, and his depiction of the record as showing no periods

5   of abstinence, *see* AR 813.

6          A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . .

7   be a contributing factor material to the Commissioner's determination that the individual is

8   disabled."  42 U.S.C. § 423(d)(2)(C).  An ALJ therefore must, where relevant, conduct a DAA

9   analysis and determine whether a claimant's disabling limitations remain absent the use of drugs

10  or alcohol.  20 C.F.R. §§ 404.1535, 416.935.  The ALJ must, first, identify disability under the

11  five-step procedure and, second, conduct a DAA analysis to determine whether substance abuse

12  was material to disability.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  "If the

13  remaining limitations would still be disabling, then the claimant's [DAA] is not a contributing

14  factor material to his disability.  If the remaining limitations would not be disabling, then the

15  claimant's substance abuse is material and benefits must be denied."  *Parra v. Astrue*, 481 F.3d

16  742, 747-48 (9th Cir. 2007).

17         The ALJ properly conducted the DAA analysis.  *See* AR 804-31.  The ALJ also

18  reasonably considered the absence of evidence associated with Dr. Brenner's awareness of

19  Plaintiff's functioning with and without alcohol use, and rationally construed the evidence to

20  show that, when considering his functioning without the use of alcohol, Plaintiff would have

21  greater functional abilities than opined by Dr. Brenner.

22         As Plaintiff observes, the ALJ's decision recounts Plaintiff's periods of reduced alcohol

23  use, as opposed to complete abstinence.  *See, e.g.*, AR 813 (noting October 2020 admission of

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 13

alcoholism, report of excessive use, and starting naltrexone, followed by several months of a significant decline in alcohol intake, a return to prior frequency of use in the spring and summer of 2021, and that he usually declined to reduce his drinking at subsequent mental health treatment visits) (citations omitted); AR 823 (noting, in support of finding that the record showed severe mental impairments but exaggerated at times by alcoholism, Plaintiff's admission of alcoholism, but refusal of referrals for addiction intervention, inpatient rehabilitation, and Alcoholics Anonymous, that he declined to work with psychiatry, a clear reduction of drinking and generally normal psychiatric review after starting naltrexone in 2020, but more recent, April 2021 treatment notes reflecting a return to heavy drinking of up to twenty glasses of wine a night even while on naltrexone, and, as recently as April 2022, an admission of seven drinks a day, and that he "was told this was 'likely playing a role in his mood and anxiety symptoms'", but declared he was not interested in further reducing his drinking) (citations omitted).  However, the terminology used by the ALJ does not undermine his conclusion in relation to Dr. Brenner.  The ALJ properly, and consistent with the DAA analysis, discussed the medical opinions in relation to the issue of Plaintiff's functioning when using or not using alcohol and, in so doing, acknowledged the evidence of varied alcohol use.  *See, e.g.*, AR 824 (noting inconsistency between Plaintiff's June 2020 report to Dr. Khurana that he drank alcohol two-to-three days a week, some days not at all, and could binge on up to four or five glasses of wine, and his October 2020 admission that he "was an alcoholic and had been drinking the equivalent of 10 glasses of wine daily 'forever'", and finding this suggested Dr. Khurana was not adequately informed of Plaintiff's alcohol use when assessing limitations) (citations omitted); AR 825 (finding it unclear whether Dr. Yun fully considered the effects of alcohol on Plaintiff's functioning given that he told Dr. Yun, in July 2021, that he had "'cut back' thanks to naltrexone", but a month later

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 14

1   informed a social worker he was drinking ten-to-twelve glasses of wine a day and the social

2   worker noted the substance use clearly made his mental health worse) (citations omitted); and

3   AR 826 (pointing to the evidence associated with treatment and MSEs "since significantly

4   reducing his alcohol intake" in assessing the opinion of Dr. Brenner).

5          Plaintiff, finally, argues that evidence both cited and not cited by the ALJ does not

6   support the conclusions as to conservative treatment and generally normal MSE results, and that

7   the ALJ lacked sufficient information regarding any caretaking he performed to reach a

8   conclusion as to inconsistency.  However, even if the evidence could be interpreted differently,

9   the ALJ rationally interpreted the record as showing conservative treatment and generally normal

10  MSE results other than at times varied mood and affect, and rationally found evidence of his

11  caretaking activities somewhat inconsistent with the opinion of Dr. Brenner.  The caretaking

12  activities are, for example, reasonably construed as inconsistent with Dr. Brenner's opinion that

13  Plaintiff had a current history of one or more years' inability to function outside of a highly

14  supportive living arrangement, with an indication of continued need for such an arrangement.

15  AR 797.  The Court, for this reason and for the reasons stated above, finds no error in the ALJ's

16  conclusion that Dr. Brenner's opinion is not persuasive in the absence of Plaintiff's alcohol use.

17          4.    *Vanessa Chin, M.S.*

18          Plaintiff's therapist, Vanessa Chin, M.S., opined in a March 2024 letter that Plaintiff

19  experiences significant functional limitations, including challenges with attention span, memory,

20  decision making, and social functioning, resulting in difficulty sustaining concentration,

21  maintaining stamina, interacting with others and screening out environmental stimuli, and that

22  his symptoms would interfere with his capacity to sustain regular employment.  AR 1235.  She

23  noted Plaintiff was actively engaged in his treatment and had consistently demonstrated

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 15

1    compliance with treatment, but found the prognosis for full-time employment remained guarded

2    and that his condition and associated functional limitations significantly impacted his ability to

3    maintain gainful employment.  AR 1235-36.

4         The ALJ found Chin's opinion not persuasive if Plaintiff stopped substance use.  AR 826.

5    The ALJ noted Chin offered her opinion after about three months of treatment and found she

6    appeared to rely heavily on Plaintiff's self-report.  *Id*.  He also found the opinion not consistent

7    with the evidence, including the clinic's own progress notes, which showed decreased anxiety

8    and increased insight with treatment, and consistently normal MSE signs, despite at times

9    appearing tired or discouraged, such as appropriate behavior, euthymic mood, congruent affect,

10   good judgment/impulse control, intact memory, good attention/concentration, unremarkable

11   thought process, appropriate thought content, and intact functional status.  *Id*. (citing AR 1237-

12   47; AR 635, 647-48, 660-61, 677-78, 693, 719, 1083, 1149, 1230-31).

13        Plaintiff notes that mental health evaluations necessarily rely in part on both a patient's

14   self-reports and a clinician's observations, *see Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.

15   2017), and asserts error given that Chin did not express any concerns as to his self-reports and

16   noted she based her opinion on her own observations, *see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

17   1194, 1199-1200 (9th Cir. 2008) (ALJ does not properly reject "an examining physician's

18   opinion by questioning the credibility of the patient's complaints where the doctor does not

19   discredit those complaints and supports his ultimate opinion with his own observations."; noting

20   nothing in record to suggest physician disbelieved claimant's description of symptoms or relied

21   on those descriptions more than his own clinical observations).  Plaintiff also challenges the

22   finding of inconsistency, asserting that "'doing well for the purposes of a treatment program has

23   no necessary relation to a claimant's ability to work or to her work-related functional

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 16

1   capacity[,]'" *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) (quoting *Hutsell v.*

2   *Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)), pointing to contrary evidence of his mood and

3   affect, and accusing the ALJ of improperly playing doctor.  Plaintiff further asserts error in the

4   ALJ's failure to address the consistency between Chin's opinion and the opinions of Drs. Cahn

5   and Brenner.

6          The Court finds no reversible error.  That is, even assuming Chin did not rely heavily on

7   Plaintiff's self-report, the ALJ's finding of inconsistency suffices to support his conclusion.  *See*

8   *Woods*, 32 F.4th at 793 n.4 (finding that even if an opinion is supported, an ALJ may properly

9   find it unpersuasive because it is inconsistent with the record).  The ALJ here rationally and with

10  the support of substantial evidence identified inconsistency with both Chin's own progress notes

11  and with the medical evidence as a whole.  *See, e.g.*, *Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th

12  Cir. 2022) (affirming ALJ's discounting of a treating physician's opinion that was inconsistent

13  with the treatment record showing normal findings and evidence of improvement); *Bayliss*, 427

14  F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion

15  and the physician's own notes or observations is "a permissible determination within the ALJ's

16  province.")  Neither Plaintiff's alternative interpretation of the evidence, nor the ALJ's failure to

17  specifically note that Chin's opinions were consistent with some of the other medical opinions in

18  the record supports a finding of error.

19                                **CONCLUSION**

20          For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and

21  / / /

22  / / /

23  / / /

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 17

1   this case is **DISMISSED** with prejudice.

2        Dated this 3rd day of September, 2025.

3

4                                        S. KATE VAUGHAN
                                         United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 18